Good morning. We have four cases this morning for oral argument. We're going to take a break after, probably after the third one, but maybe after the two. We'll see how it goes. With me today is Judge Carson from New Mexico, Judge Federico from Kansas. So we're well represented around the circuit today. Is that council ready? So let's get started. The first case is 24-1088 United States v. Judkins. Mr. Wysoki. Good morning, Your Honors. Thank you. May it please the court, my name is Jason Wysoki and I represent appellate Mr. Judkins today. This case presents several issues, but I would like to discuss with this court the Fourth Amendment violation that necessitates reversal. Specifically, I'd like to discuss the unconstitutional overbroad search of Mr. Judkins' cell phone based on a warrant that lacked sufficient particularity. The warrant in this case has no bounds when it comes to Mr. Judkins' cell phone. It allowed the government to search and seize every single bit of his personal life. And as the Supreme Court recognized in Riley, cell phones are unique. They are unique in every way. There is nothing else in this world that keeps better track of our most personal and intimate life than a computer we carry around in our pocket recording all of our moments via photographs, all of our steps via a pedometer, and all of our location via GPS. It contains all of our banking information. These are not things that the court is unfamiliar with, but what it does require is it requires the police and the government to do the hard work of policing, and it is hard work. The hard work of policing can be simply shortcut by seizing somebody's cell phone and rummaging through it generally to find every potential possible little bit of data that might support bringing a criminal charge. Now, in this case, Mr. Judkins was not charged with a conspiracy, which is critical. He was charged with possession with intent to distribute marijuana and methamphetamine and possession of a weapon in furtherance of a drug crime. Now, what the government was able to do is create and manufacture a prosecution based entirely on one piece of evidence. That was his cell phone. The government did not limit their search of the cell phone to anything. And while the warrant and the affidavit in this case has lots of polysyllabic words, ultimately, when you look at the warrant itself, it is clear that there is nothing that is off limits to the government. Don't our cases suggest, though, that if the application for the warrant specifically lists the crimes that they're trying to research, investigate, that that does supply some particularity? And the warrant here did say, we're looking for these crimes. In addition to the cell phone, there was other evidence of drug distribution, the gun and the drugs in the car. But don't our cases suggest that enough? And if they don't suggest that that's enough particularity, what's our best case that we could use to support your theory of the case? Yeah, sure. So, yes, this circuit's case law does say that if the affiant of the warrant sort of mutters abracadabra in the warrant, that creates sufficient particularity, the abracadabra obviously being the subject offenses in this case or human trafficking, for example, in the Burgess case. But they also said, we want to look for photos of his potential accomplices, text emails. I mean, it does list some of the parts of the computer that they were particularly interested in. Yes, but the way that the affidavit works in all practicality is that, and as the affidavit actually says in paragraph 15 of it, is that what the officer is going to do is he's going to look at everything because he doesn't know if it's going to be particularly relevant or useful until he looks at everything. In fact, he says something to the effect of, a piece of information or a photo may not be relevant immediately until I look at every other photo to see if maybe it fits into a larger picture. And I think this court's opinion in Laura, 923F3907, which really articulates perhaps what the kernel or the core of the truth here is. And that is, it is the how and not the where, right? How the government goes about looking into our most intimate and personal information is what matters. Well, counsel, can I ask you about that? Yes. I would agree that our recent cases discuss the importance of looking at how the search is conducted or the scope and manner of the search. The government says you waive that argument, though, because you didn't fully brief it. In fact, your focus was primarily in your particularity argument about the what that they were going to search. So what's your response to the government that that argument isn't waived? Well, it's not waived because they're all part of the singular idea, which is particularity. The warrant has to be particular in what, where, how it's looking for this intimate personal data. Does your argument on appeal also have to be focused on specific arguments that attack the particularity or the lack thereof? Yes, and it does. As we articulate in both our opening and reply brief, the warrant itself, particularly the affidavit, has no parameters on where or how it's going to look for data. What it does is it says, I'm going to look at everything, I'm going to seize everything, I'm going to search everything, and then I'm going to figure out after the fact whether or not it was relevant. And it's this after-the-fact analysis that is particularly problematic in the Fourth Amendment, because the Fourth Amendment requires that the warrant at the outset must be particular. And here, what we're engaging in in this digital era is a post hoc rationalization of an examination of whether or not the warrant was sufficiently particular after all the information has already been searched and already been seized. That's the cart before the horse. You have to have the particularity before you even go look. And you're right about all that, too. Why doesn't good faith apply? Why doesn't good faith apply? Yes. Well, for the exact same reason, Your Honor, and that is that no police officer, in this case an ATF agent, should be able to say that it is reasonable for me to look at every single thing on somebody's cell phone, because that's what this warrant and every other warrant like it authorizes, and say that, well, it's good faith. And what ends up happening is we have a situation where, well, a magistrate approves the warrant, and that creates the good faith exception. That is a prime example of the exception swallowing the rule. If all an officer has to do to have a warrant pass constitutional muster is to say, I'm going to search for basically everything in the cell phone, fancy language, fancy language, related to the subject offenses, and then the magistrate grants that warrant, well, then every single time the good faith exception is going to apply. That's not what an exception is. I mean, don't you think one of the problems you have, though, is, like, I'm just looking at my phone here. And they listed a bunch of different things they wanted to look, and it sounded like they were looking at the whole phone. Yes. The calendar, the text messages, the camera. Be careful, I can see all that. There are no secrets being displayed here. Reminders, files, e-mails, phone calls. Those are all, I mean, that encompasses most of the information on my phone. And they listed them all, and they're all arguably relevant in an investigation of a drug crime. You may be right, Your Honor, but what is important here is that the government has to do more than just simply arrest somebody, seize their cell phone, and then use that as the sole basis on which to create a conviction. Well, they didn't. He arrested them. They found more than just cell phones. They found scales, cash, some drugs, didn't they? They did. Doesn't that give them something? Then they say, well, gosh, this guy appears to be a drug dealer, and so we want to look at his phones, we want to look at his notes, his messages, his files, his pictures to corroborate this. Yes. And what the police easily and frankly should have done in order to comply with the Fourth Amendment is limited their search of the phone to very specific information about what they found in the car and how it would relate. So, for example, I don't know if Your Honors are familiar with Google Photos. Most of us store our photos in Amazon, Google, or even on our phone, and you can do a search for things like cars or guns or drugs, and it will return specific photos related to that search data. Have that search come up. Okay, well, now I'm looking at a photo of a gun, for example, which doesn't exist in this case. How about text messages? Well, the government is very familiar with experts who talk about the coded languages in which drug dealers communicate, snowflake emojis, talking about trees. Do searches for those, and then if they find that information, use that to support it. For the gun charge, as I argued in the brief, the court could have used the information that it gathered to go and knock on doors and talk to the people who bought from Mr. Jukins and say, hey, did he bring a gun to this transaction? Well, now you have a really good argument, if you're the prosecution, for the gun and furtherance of the possession and distribution. They didn't do that. They took the easy road, and it is this branch's job to make sure that the executive branch does its job, which is to do the hard work of policing and not take the easy road. Well, how is this different than police getting a search warrant to search someone's house? They don't know where the relevant evidence or contraband may be in the house. They don't go to the magistrate judge and say, we only want to go to the kitchen and look in this drawer, because we think that may be where the drugs are located. How is this any different than going in and searching the whole house? And here, attachment B to the warrant, they said to the magistrate, we're going to essentially do a phone dump, and then we'll have all the data, but all that we're looking for is this items that are listed in attachment B. That's what we're going to seize. And the manner in which we do that is we're going to have to look at everything, but ultimately what's going to be seized for potential evidence is this. How is that any different than going in to search a whole house? Your Honor, it's radically different. If the cops come in and search my whole house, and I don't have my photo albums in my house, because I keep my photo albums in a storage unit, or I keep them at my mom's house, or I keep them at my mistress's house, okay, that information is never going to be seen by the government. So, yes, they can go in, and let's say they're looking for a gun or drugs in my house, and they rummage through my house, and they don't find any of those things because I don't keep them there, okay? With a cell phone, everything is there, everything. And in this warrant, they don't just ask to search and seize information within the hard drive of the cell phone. They say, well, there's accounts, and we're going to access the accounts that are within the cloud or a banking application. So now you are in a completely unlimited search, because now you're not just searching what's on the phone, maybe physical storage, maybe even my personal iCloud storage, right? You are now searching, you know, Chase Bank and all of the accounts on Chase Bank's website that happen to be accessed through the cell phone, and on and on and on. Every single application, Your Honor, no longer is a physically stored piece of information. It is accessed through the cloud. Cell phones are different, basically. Not only are they different, Your Honor, as I think the Supreme Court recognized in Riley, is they are completely unique. And the foundation upon which Fourth Amendment jurisprudence has been built, physical searches, simply does not apply here. Every time we try and analogize it doesn't work. I'm wondering if you mentioned that if the government had supplied a date range, that might have been enough to supply sufficient specificity. Why would a date range solve the problems that you're talking about? Sure. In this case, Your Honor, it solves the problem, because all the police knew was that Mr. Judkins had been driving around for a day. They didn't see any drug deals. And that he had a warrant for, I think, a looting up in Adams County, which was ultimately dismissed. So they have no information before they pin his car against the wall and search the car of actual any drug activity. So they know based on the items in the car that he's got about a thousand bucks in cash, a little bit of marijuana, and a little bit of methamphetamine. They could search based on a date range of one or two days prior, that day and the day prior, and then build their case from there. Instead, what they did, again, they short that. How many warrants do you want them to get? They get a warrant limited to two days, then do they have to go back and get an additional week and just keep chipping away at it like that in your mind? The short answer is, Your Honor, yes. To analogize maybe to the Burgess case. So in the Burgess case, they take this guy's hard drive from an RV, and they search it, and they find some child pornography. And then they go and get a warrant for that information. Here, they could have had a gun, done the hard police work, knocked on the door of a customer and said, have you ever bought from this guy before? Yes. How many times? Weekly. Boom. Now go get a warrant to search for a longer period of time. I would like to reserve the remaining 15 seconds. Thank you. Let's hear from Mr. Brenton. Good morning, Your Honors. May it please the Court, I'm Kyle Brenton on behalf of the United States. As my colleague has, I'll focus entirely on the Fourth Amendment issue, unless the Court has questions about the other issues raised in the briefs. Actually, on the video evidence, I did get a chance to watch the video. It's very entertaining. But to use that as a basis for a factual determination on gang membership seems a little thin. Well, I think, Your Honor, I would make two points on this. Because we're talking now about the Court's overruling of Judkins' objection to the finding that he continued to engage in gang activity while on pretrial release. First, I think, as we established in our brief, the Court never returns to this point over the entire course of the sentencing. Explains in great detail why he was choosing the sentence he was choosing, never mentions it. So I think the clearest answer there is that this was harmless because Judkins hasn't shown how it affected the sentence in any way. I think— Well, the Court did go to the trouble of overruling the objection. He did. He certainly did. Endorsing that. And that is a decision— Back to PSR. That is a decision that this Court reviews for clear error only. So, I mean, the question then boils down to, you know, Judkins makes the decision to record and release these videos in which, you know, there's no dispute that he's making gang signs, that he's using gang language, that there was no argument. No, no, no. Those aren't gang signs. That's not gang language. He's on pretrial release in this case. The videos—I mean, if you watch them, Your Honor, he mentions the judge and the prosecutor by name in these videos. You know, the question is, was that some evidence that would allow the Court on a clear error standard to make that finding? We think the answer to that question is yes. Turning to the Fourth Amendment question, the warrant to search Judkins' iPhone was right down the middle of this Court's precedent regarding what has to be in a warrant application to satisfy the particularity standard. And I want to take us back to what Judge Timkovich's question was, which is this Court's precedent. And this Court has held again and again in the context of searches of computers and cell phones that what is required is that the warrant limit the scope of the search to evidence of specific crimes or specific types of material. And that's from Palms. It's from Russian. It's from Otero. It's from Riccardi. I mean, that is—there is no doubt that that is what is required. And that is what happened here. The warrant is—the scope of the warrant is limited to evidence of the subject offenses, which are listed by number and name. And it's listed in the warrant application there, drug distribution under 841, possession of a firearm under 924C, and use of a communications facility to further a drug felony under 843B. So, you know, these are the subject offenses. That's what the warrant has to say. But I think it's also worth remembering in this case that this was not a, oh, we see a cell phone. There might be evidence of drug dealing on it. The context in which this phone was found gives rise to a very strong inference that there's going to be evidence of these subject offenses on this phone. So to review that scene, the phone is found on the ground outside the open driver's seat where Judkins dropped it as he fled from police. In the car, there's another phone in the driver's seat, the Motorola phone. In the footwell of the car, you have a loaded pistol, a digital scale with drug residue. In the console, you have $1,900 in cash subdivided into $100 bundles. In the pocket of the driver's side door, you have baggies. Elsewhere in the car, you have 8 methamphetamine pills and 100 grams of marijuana subdivided into 8 different bags. All of this evidence gives rise to a very strong inference that this is not just a car. This is a mobile drug distribution business and that these phones are being used to run that business. In fact, when you think about the subject offense of use of a communications facility to facilitate a drug felony, the phone was the communications facility. So limiting the warrant to the subject offenses, that's not empty words. It's not magic words. It's really very squarely arises from what was recovered at the scene in terms of physical evidence. Counsel, can I ask you, though? We have also said a limiting principle must be contained within the warrant and not just the manner of search, but what you're looking for. And looking for just sort of guardrails. And the classic is the open-ended language. We're looking for any and all. And we said, well, what are limiting principles that we can discern? Let me ask you about one in particular. Attachment B, when the client was describing the evidence to be seized, it contains in line 16. It says that they want to seize contextual information necessary to understand the evidence described in this attachment. Has that language, are you aware whether that's been used in these types of warrants before? Because that seems pretty broad to me to say, well, we just want contextual information. I mean, that doesn't seem to contain any of those limiting principles, does it? Well, I think, Your Honor, first I would say that all of the categories of evidence in Attachment B are limited by the prefatory paragraph at the beginning of Attachment B, which says that these are, we're looking for evidence of these subject offenses. Sure. Again, I'll spot you that the warrant specifically lists three offenses that you want to find evidence that relate to those offenses. And that is certainly one way our precedent has said a warrant can be limited. But I'm going to the more general sort of guardrail limitation that we just reaffirmed last year in Solace, where we said we also look for limiting principles on these sort of broad, over-sweeping statements that really don't seem to contain any guardrails at all. So that language kind of stuck out to me. That's why I was asking about line 16 in particular and whether that's something that's commonplace that we have affirmed before. Well, Your Honor, I am not familiar with a specific case from this Court addressing that particular item. I mean, this is, I will say, a very standard warrant that is prepared in federal prosecutions. It was reviewed by a prosecutor in our office. So I have no basis for not saying that it's standard language. I'm not aware of the Court addressing it specifically. I think, though, looking at the affidavit, as Agent Pound describes, based on his training and experience of how individuals engaged in drug trafficking use their phones to forward their business, he makes it clear that sometimes pieces of information on a phone in isolation, it's not clear how they may be relevant. But when you look at them in combination with one another, that then the relevance to the subject offenses becomes clear. And I think that that is what that language is getting at. I think it's getting at the necessity of understanding the evidence on this phone as a whole that is relevant to the subject offenses. So that's where I would say that that language comes in. And I would also point out to the Court, and I think that Judge Federico's questions to my counterpart go to this. There has been no challenge whatsoever to how this such search was actually conducted. Mr. Judkins below had every opportunity to say, yeah, yeah, yeah, okay, fine, it was limited to particularity, but look at what he actually did. Look how he actually went to my bank records. Look how he actually went to my medical information. He had every opportunity to develop evidence that the officers did not abide by the limitations of the warrant, and he chose not to. And he didn't make that argument on appeal. So I think that this Court's review is really limited to this narrow particularity question. And, you know, finally I'll turn to the question of good faith. Because, you know, as I say, this warrant was right down the middle of what this Court has told prosecutors and officers over and over again they need to do. And I think that the agent here acted in 100% good faith with that approach. The warrant was signed and issued by the magistrate judge. The same agent, Agent Pound, drafted the application and conducted the search. He consulted with an AUSA in preparing the warrant. And there's been no allegation from Judkins of anything remotely approaching police misconduct. I mean, certainly Judkins thinks that the investigation should have been done differently than it was. But there's no hint that these officers did anything wrong. And, again, he forwent any opportunity to develop that evidence below. So I think, first of all, I don't think that there is any issue with the warrant. I don't think this Court can find one. I think it's squarely within this Court's precedent. Even if it weren't in some small regard, perhaps as Judge Federico points out, it certainly was executed in good faith. So unless the Court has any further questions. Can I ask you about the 924C conviction?  Do I understand the government's argument here to say that all the items you listed when you stood up here about the baggies, the scale, it's all the physical items that are the instrumentalities of the drug trade was sufficient for the jury to conclude that the firearm was possessed in furtherance of, rather than the drug quantities themselves, which, as I read the brief, seem to be user quantities, not sort of distribution quantities. Is that an accurate recitation of your position? It is, Your Honor. I mean, I would say as to the quantities of drugs found in the car, they were, the officers encountered Mr. Judkins at the end of his day. He had the money from selling the drugs, but he had sold the drugs. So there was 100 grams of marijuana and 8 pills of methamphetamine left in the car. I think, though, that under Trotter and under King, there's no requirement that there be, there's no threshold that the government has to meet or exceed in order to give rise to sufficient evidence that the gun was used in furtherance of. You know, I think all of the Trotter factors are met here. You know, the type of activity, type of drug activity, it was, as we say, a mobile drug distribution business. He was going door to door to his buyers to sell. The accessibility of the gun, it was literally between his feet on the floorboards. One of the officers testified it was as close to the driver's seat as it could possibly be. The type of gun, it was a pistol, which this court has held as one of the, quote, tools of the trade of drug distribution. The legal status of the gun, he was not barred from possessing it, but the evidence at trial was that it was purchased by someone other than Julius Judkins. So it was certainly a gray market gun, and the experts testified that that's what's commonly used in the drug trade. Proximity to drugs and profit, it's literally within inches of drug residue of the money from the sales. Loaded, yes, round in the chamber, and the time and circumstances, he's literally dropped his phone while arranging a deal to run, and the gun was right between his feet. So I think regardless of the amount, the Trotter factors here were unquestionably met. In the evidence of what had occurred prior in the day about these transactions, my understanding is that came from the phones and communications more than direct observation by police officers or any type of witnesses who would testify to those transactions. Was the jury presented evidence of the phone communications that would indicate drug trafficking activity that same day? Absolutely, Your Honor. There are three exhibits. I believe it was 38, 39, and 40 at trial. Each one of those presents his messages from the phone for, 40 is the day of the arrest, 39 is the day before, 38 is the day before that. So again, we are only talking about three days' worth of evidence that was presented at trial. And the government's experts, DEA agents, went through those, said, you know, this is what these words mean. You know, this is what beans mean. This is what, and it is a litany of deals made in that time. If there are no further questions, the government would ask that the conviction be affirmed. Thank you, counsel. Could you put two minutes on for rebuttal? I don't want that much. You don't have to use it. Thank you, Your Honors. I appreciate it. I would like to address a couple of issues with regard to the discussion with my colleague. The dates of the offense for which Mr. Judkins is convicted is a specific date. The government has the ability to charge Mr. Judkins with crimes on multiple days, a conspiracy going back weeks, months, or years, but they didn't. And what we just heard is exactly what we raised in our opening reply brief, that is the problem presented with the search and seizure allowed by this warrant, is that the government obtained and used data to convict my client going back years. 2019 is as far back as the data went. And at trial, they presented at least three days' worth of evidence to convict my client for a single day of activity. All of it almost begs the question of why is this a federal case in the first place? But at the end of the day, at the end of this trial day, what we have is a jury who hears not about a single day of criminal activity, but a many day, almost a week, maybe even implied as much, much more of criminal activity. So they're going to get the bad guy. And that was the point of the use of this cell phone evidence. And when it comes to the firearm and furtherance of possession, again, it is important to understand that if the police are required to do that hard work, that sort of shoe leather work of policing, and they find, based on a transaction, that Mr. Judkins is going to a legal cannabis store, purchasing cannabis, and one of the workers there notices he has a gun. Lock, stock, and barrel. If one of his customers says, yeah, he always comes, he puts his gun on the table, and that's when we do the deal. Lock, stock, and barrel. Thank you. Counsel, your time has expired. We appreciate it. Thank you, Your Honor. We see arguments this morning. The case is submitted. And before I excuse counsel, I want to thank Mr. Wosocki for taking these CJA cases. The court appreciates your work on behalf of that program. Thank you, Your Honor. Counsel excused.